**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 13, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EDWIN TOMLIN,

      Petitioner - Appellee,

v.

DAVID R. McKUNE, Warden,
Lansing Correctional Facility; PAUL
MORRISON, Kansas Attorney
General,

      Respondents - Appellants.

No. 07-3286

(D. Kansas)

(D.C. No. 06-CV-3296-JWL)

### ORDER AND JUDGMENT[*]

Before **HARTZ**, **HOLLOWAY**, and **ANDERSON**, Circuit Judges.

      Appellant, the State of Kansas, through David R. McKune, the Warden of

the Lansing Correctional Facility, and Paul Morrison, the Attorney General,

appeals the grant of a writ of habeas corpus to appellee Edwin Tomlin, an inmate

incarcerated at Lansing on state convictions.  We reverse and remand.

---

     [*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

# BACKGROUND

On June 16, 1998, Tomlin was charged with one count of rape, in violation of Kan. Stat. Ann. § 21-3502(a)(2), and one count of aggravated indecent liberties with a minor, in violation of Kan. Stat. Ann. § 21-3504(a)(3)(A). Both counts involved Tomlin's eleven-year-old stepdaughter.

Although the offense of rape was the subject of a separate count from the offense of aggravated indecent liberties with a child, jury instruction no. 10 stated as follows:

> The offense of rape with which defendant is charged includes the lesser offense of aggravated indecent liberties with a child. You may find the defendant guilty of rape, or guilty of aggravated indecent liberties with a child, or not guilty. When there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only.

St. Tr. R. Vol. I. Thus, under count 1, the jury could find Tomlin guilty of rape, or guilty of the lesser included offense of aggravated indecent liberties, or not guilty.

During the jury's deliberations, the jury sent to the court the following note:

> We are hung
>
> 3 for Guilty to Count 1
> 3 for Not Guilty to Count 1 or 2 due to reasonable doubt
> 6 for Guilty to Lesser Charge of Count 1 and Guilty to Count 2
>
> We reviewed the facts and your instructions. We have discussed how to "compromise" but we all feel very strongly that we must vote what

we believe.  Also we feel strongly about our Duty to reach a decision for this Trial.

To help us break our deadlocks–what can you say or do for us?  We want to come to a decision.

Appellant's App. at 145.  In response, the court gave the jury an instruction under Allen v. United States, 164 U.S. 492 (1896), and told them to continue deliberations.  Two hours later, while the jury was still deliberating, the defense moved for a mistrial.  The court took the defense motion under advisement.  Shortly thereafter, the jury sent out another note:

We have moved to 11 guilty to count 1 of the lesser aggravated indecent liberties and 1 not guilty to count 1 or 2 due to reasonable doubt.

We have all agreed to Not Guilty to count 1 Rape.

Since 3 pm today, we have made good progress.  However the one has stated that since we haven't convinced him of his reasonable doubt position that he will never change his mind.

We are at an impasse.  Most of the jury feels further discussion will not change his mind.

Appellant's App. at 146.  At this point, the state also moved for a mistrial.  The jury was called back into the courtroom and the foreman confirmed that the jury was in fact deadlocked.  Based upon the jury's inability to reach a unanimous verdict, the court declared a mistrial.  A few days later, Tomlin filed a motion for judgment of acquittal, arguing that the jury's second note amounted to an acquittal on the rape charge.  The court denied Tomlin's motion, holding that it

-3-

was not clear to what extent the note represented simply a compromise vote in an effort to bring deliberations to a conclusion, as opposed to an actual verdict of acquittal.

Tomlin was subsequently retried and was convicted of both counts. He was sentenced to 334 months' imprisonment for the rape charge and 51 months for the aggravated indecent liberties with a child charge, to run consecutively, for a total of 385 months.

## I. State Proceedings

As indicated above, Tomlin's counsel timely moved for a judgment of acquittal, which was denied both on state procedural grounds and based upon the trial court's comment that it was unclear whether the jury had actually reached a verdict.

### A. Direct Appeal to KCOA

Tomlin appealed his conviction in the second trial to the Kansas Court of Appeals ("KCOA"), arguing, *inter alia*, that the court erred in granting a mistrial and denying his motion for a judgment of acquittal, thereby subjecting him to double jeopardy.

The KCOA ruled that the court did not abuse its discretion in granting a mistrial, inasmuch as Tomlin had himself moved for a mistrial and never objected

to the state's motion for a mistrial. The KCOA further held that "[d]ouble jeopardy did not prevent a subsequent trial because the first trial was terminated with Tomlin's consent" and the jury in the first trial did not issue a verdict. Mem. Op. at 11, Appellant's App. at 114.

## B. Collateral Proceeding – Trial Court

Tomlin then filed a state collateral proceeding, in which he argued that he had received ineffective assistance of counsel in his first trial in that his trial counsel should have opposed a mistrial and moved the court to accept the jury's note as a verdict of acquittal on the rape charge, that counsel erred in presenting his double jeopardy argument, and that appellate counsel erred in failing to argue that the jury in his first trial acquitted Tomlin of rape. The state trial court ruled: defense counsel did, in fact, ultimately request (at the hearing on the motion for judgment of acquittal) that the jury's second note be deemed a verdict of acquittal. Furthermore, the court concluded, both in fact and in law, that the jury's note did not constitute a verdict on the rape charge. The court accordingly found that Tomlin could establish neither deficient performance nor prejudice. The court also found, for essentially the same reasons, that Tomlin's appellate counsel was not ineffective.

### C. Collateral Appeal to KCOA

On appeal, the KCOA similarly denied relief. <u>Tomlin v. State</u>, 130 P.3d 1229 (Kan. Ct. App. 2006). After noting that "the status of Kansas law was (and is) that Kansas does not recognize partial verdicts, and absent a verdict on all charges in conformity with K.S.A. 22-3421 a defendant can be retried following a mistrial due to a hung jury," <u>id.</u> at 1234, the KCOA held that "[t]he performance of Tomlin's trial counsel was not constitutionally deficient." <u>Id.</u>[1] For essentially the same reasons, the court found that Tomlin's appellate counsel was not ineffective.[2]

---

[1]Kan. Stat. App. § 22-3421 provides as follows:

The verdict shall be written, signed by the presiding juror and read by the clerk to the jury, and the inquiry made whether it is the jury's verdict. If any juror disagrees, the jury must be sent out again; but if no disagreement is expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case. If the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged.

[2]The KCOA observed that the Kansas case cited for the prohibition of partial verdicts, <u>State v. McKay</u>, 535 P.2d 945 (1975), quoted with approval language from <u>People v. Doolittle</u>, 23 Cal. App. 3d 14, 19-20 (Cal. Ct. App.1972), in which the court stated:

[I]n the trial of an offense which necessarily includes a lesser offense . . . the jury, before they can return a verdict, must, on the one hand, agree that the defendant is guilty of the offense charged or any included offense or, on the other hand, agree that he is not guilty of any offense, whether the greater or the lesser.

<u>Id.</u> at 19-20. Tomlin argued before the KCOA that the language relied upon in

(continued...)

-6-

**II. Federal Proceedings**

Tomlin then filed the instant federal habeas petition. The district court granted the habeas petition. Tomlin v. McKune, 516 F. Supp. 2d 1224 (D. Kan. 2007). Its reasoning was as follows: The KCOA used a state law ground (the claimed prohibition on partial verdicts stated in State v. McKay, 535 P.2d 945 (1975)) to find, on the merits, that Tomlin's counsel was not ineffective. However, in order to bar federal review of that decision, the state law ground,

---

[2](...continued)
Doolittle was effectively disavowed in Stone v. Superior Ct. of San Diego County, 646 P.2d 809 (Cal. 1982). Tomlin argued that that circumstance should have prompted Tomlin's trial counsel to withdraw his mistrial motion, oppose the state's mistrial motion, and ask for a partial verdict on the rape charge, since it suggests that the Kansas Supreme Court would probably reverse its ruling in McKay and sanction a partial verdict for Tomlin on the rape charge. The KCOA rejected this argument:

> It would be laudable if trial counsel, when faced with an issue such as this, could, within the short time allotted, engage in the analysis of Kansas and California law that Tomlin suggests. In fact, it would be not only laudable but quite extraordinary. The Sixth Amendment does not set the bar for trial counsel's performance so high.

Tomlin, 130 P.3d at 1234. The court further explained:

> Here, Tomlin's criticism is based on counsel's failure to anticipate a change in the law which has yet to occur and, in fact, may never occur. To meet the reasonableness standard for effective assistance, trial counsel need not be prescient or omniscient. We hold Kansas lawyers to an understanding of Kansas law, not California law. While the growth of the law is dependent upon creative lawyers advancing new theories, failure to do so does not render a lawyer's performance constitutionally deficient.

Id.

-7-

whether substantive or procedural, must be "'firmly established and regularly followed.'" Tomlin, 516 F. Supp. 2d at 1229 (quoting Lee v. Kemna, 534 U.S. 362, 376 (2002)). The federal district court concluded that "the prohibition on partial verdicts in Kansas is not an independent and adequate state ground," because, prior to Tomlin's habeas appeal, there was no Kansas case specifically prohibiting "the course of conduct Mr. Tomlin asserts his counsel should have taken—that counsel should have moved for a formal verdict where there was a unanimous decision known by the court before the jury was discharged." Id., and because McKay has only been cited once for the partial verdict proposition. Thus, the district court reasoned, the KCOA decision relied solely upon a state ground which is not regularly followed or firmly established, and therefore it cannot bar federal review of any constitutional issue presented.

The district court concluded that the federal constitutional question underlying Tomlin's claim, which the KCOA did not address, was whether Tomlin's counsel's actions were reasonable or not "in light of the Fifth Amendment double jeopardy prohibition." Id. at 1231. More specifically, the district court identified the constitutional question underlying the ineffectiveness claim as "whether there was a manifest necessity for a mistrial on the charge of rape." Id. Because the KCOA did not address that issue, the district court reviewed it *de novo*.

The district court first determined that Tomlin's counsel's consent to the mistrial on the rape charge, and his failure to move to publish the claimed verdict of "not guilty" on the rape charge, were not strategic choices, but rather "an oversight or ignorance of the law during trial." Id. at 1233. The district court explained its ruling as follows:

> To determine whether there is a manifest necessity, . . . a court must take all circumstances into consideration. The issue here is when a jury is deadlocked as to one offense in a count, but not the other, is there a manifest necessity for a mistrial of the offense on which agreement has been reached.
>
> The KCOA essentially held that because there was not a unanimous agreement as to every charge in an offense, no verdict was possible. This is not the view of the Supreme Court in its double jeopardy case law.

Id. at 1235. Citing Green v. United States, 355 U.S. 184 (1957), the court concluded that "Green indicates that where an appeal is taken, a defendant cannot be prosecuted for the greater offense for which he was already acquitted in the conviction of the lesser included offense." Id. at 1236. Thus, "Tomlin should not have been forced to undergo another trial and give the prosecution a second bite at the apple when the jury conclusively agreed the state did not prove that charge [i.e. the rape charge] beyond a reasonable doubt in his first trial, and there was, therefore, no manifest necessity for a mistrial." Id. at 1237. The federal district court accordingly concluded that, under the first prong of ineffectiveness of

Strickland v. Washington, 466 U.S. 668 (1984), "it was objectively unreasonable for counsel to consent to the mistrial and not move to publish the verdict." Id.

Out of an abundance of caution, the district court also evaluated the KCOA decision under the deferential standard mandated by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA")[3] and concluded "in the alternative to its de novo review holdings, that Strickland was applied unreasonably in light of other Supreme Court precedent, and the state court was unreasonable in refusing to extend the double jeopardy prohibition in this context." Id. at 1238. Finally, reviewing the issue *de novo* because the KCOA never reached the issue, the federal district court concluded that Tomlin had been prejudiced by his counsel's ineffectiveness. As a result, the court determined that it need not address the ineffectiveness of appellate counsel.

The state appeals the district court's grant of Tomlin's habeas petition, arguing: (1) the district court failed to correctly apply the deferential standard of review of the AEDPA and, instead, "supplanted the state court's adjudication of the merits of [Tomlin's] claim with its own determination based on its own independent, and flawed, review"; (2) in its alternative deferential review under AEDPA, the district court "proceeded from a flawed premise, through an erroneous analysis, to an incorrect conclusion"; (3) and "the failure of [Tomlin's]

---

[3]As we discuss, *infra*, where a state court has addressed a federal issue on the merits, a federal court on habeas review must, pursuant to the AEDPA, apply a deferential standard of review.

counsel to move for a partial verdict not recognized under state law and not mandated by federal constitutional law was not objectively unreasonable." Appellant's Br. at 12-15.

## DISCUSSION

In an appeal from the grant or denial of a federal habeas petition, we review a district court's findings of fact for clear error and its conclusions of law *de novo*. Robinson v. Golder, 443 F.3d 718, 720 (10th Cir. 2006). Our review in this case is further limited: where an underlying state court addressed the merits of a habeas petitioner's claims, we apply the deferential standard of review contained in the AEDPA. Under that standard, Tomlin may only obtain habeas relief if the KCOA's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also Brown v. Sirmons, 515 F.3d 1072, 1077 (10th Cir. 2008), cert. denied, __ S. Ct. __ (Oct. 14, 2008). "We must presume that the state court's factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence." Wilson v. Sirmons, 536 F.3d 1064, 1073 (10th Cir. 2008). With respect to the district court, "if the district court's factual findings are entirely dependent on the state court record, our review of those findings is de novo." Id. at 1074. "If the state court did not

-11-

decide the claim on the merits, the stringent principles of deference under 28 U.S.C. § 2254 are inapplicable." Id.

As indicated above, the AEDPA "requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state court conviction became final." Williams v. Taylor, 529 U.S. 362, 380 (2000). We have recently reiterated that "[w]ether the law is clearly established is *the* threshold question under § 2254(d)(1)." House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008). Clearly established law, in turn, "is determined by the United States Supreme Court, and refers to the Court's 'holdings, as opposed to the dicta.'" Id. (quoting Lockyer v. Andrade, 538 U.S. 63, 71 (2003)). Moreover, "clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." Id. at 1016.

Finally, with respect to state law determinations, the Supreme Court has stated, "[w]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 126 S. Ct. 602, 604 (2005); see also Johnson v. Mullin, 505 F.3d 1128, 1141-42 (10th Cir. 2007) (noting that "'it is not the province of a federal habeas court to reexamine state court determinations on state-law questions'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)), cert. denied, 128 S. Ct. 2933 (2008).

This case really presents two interrelated questions arising out of the same set of circumstances: (1) Whether counsel was ineffective for not challenging Kansas law on the issue of what constitutes a verdict under that law, and (2) whether the state courts, from the perspective of a *de novo* review, violated federal constitutional principles of double jeopardy law or, from the perspective of AEDPA's deferential review, objectively unreasonably applied clearly established principles of federal double jeopardy law. We answer both questions in the negative.[4]

It is clear in this case that the KCOA, the last state court to rule upon Tomlin's case, found that Tomlin's counsel was not ineffective because, in the court's view, Kansas law prohibited partial verdicts. Thus, the trial court could not have accepted a guilty verdict on the rape charge, without receiving verdicts on the other lesser included counts. In so ruling, the KCOA relied upon State v. McKay, 535 P.2d 945 (Kan.1975).

In McKay, the defendant was tried twice on a murder charge. At the conclusion of the first trial, the jurors were unable to agree on a verdict and a mistrial was declared. After the jury was discharged, it was revealed through

---

[4]The federal district court introduced some confusion in this case by inquiring whether the state law concerning partial verdicts was an adequate and independent basis for the state courts' ruling. That goes to whether an issue is procedurally barred in state court, and therefore barred in federal court on habeas review. See Coleman v. Thompson, 501 U.S. 722 (1991). The issue of the adequacy of the verdict in this case was not procedurally barred—the issue was whether it was properly decided on its merits.

affidavits of six of the jurors that "during deliberations the jurors 'determined that the defendant was not guilty of murder in the second degree.'" Id. at 946. The second trial resulted in a conviction for voluntary manslaughter. The defendant argued that, since six of the jurors in the first trial swore that the jury had determined he was not guilty of second-degree murder, it was a violation of his double jeopardy rights to be placed again on trial for second-degree murder.

The Kansas Supreme Court rejected this argument. As noted above, n. 2, it quoted approvingly from a California case as follows:

> . . . [W]e apprehend that in the trial of an offense which necessarily includes a lesser offense, as was the case here, the jury, before they can return a verdict, must, on the one hand, agree that the defendant is guilty of the offense charged or any included offense or, on the other hand, agree that he is not guilty of any offense, whether the greater or the lesser.

Id. at 947 (quoting People v. Doolittle, 23 Cal. App. 3d 14, 19 (Cal. Ct. App. 1972)). While there have not been many cases involving this particular issue, McKay has been cited and followed in two Kansas cases, and not disavowed in any. See Long v. Kansas, 141 P.3d 525 (Table) (Kan. Ct. App. 2006) (unpublished) (per curiam); State v. Burns, 931 P.2d 1258, 1262 (Kan. Ct. App. 1997), overruled on other grds, State v. Belcher, 4 P.3d 1137 (Kan. 2000). And although Doolittle was disapproved by a subsequent California case, Stone v. Superior Ct. of San Diego County, 646 P.3d 809 (Cal. 1982), no Kansas authority has disapproved McKay. Furthermore, McKay was recently described as

-14-

following the majority rule on the issue of partial verdicts.  See People v.

Richardson, 184 P.3d 755, 763 (Colo. 2008) ("Several other jurisdictions have

addressed this issue and the majority has held that if a single charge includes

multiple degrees of offenses, the trial court may not conduct a partial verdict

inquiry as to the offenses included within the charge.") (citing cases, including

McKay).[5]

Given the above description of McKay and its treatment, it seems odd that

the federal district court declared it "not an independent and adequate state

ground" so as to bar federal habeas review.  Tomlin, 516 F. Supp. 2d at 1229.

More particularly, and more relevantly to our status as a habeas court reviewing a

state court decision, we feel constrained by the Supreme Court's admonition that

"[w]e have repeatedly held that a state court's interpretation of state law,

including one announced on direct appeal of the challenged conviction, binds a

federal court sitting in habeas corpus."  Bradshaw, 126 S. Ct. at 604; see also

Johnson, 505 F.3d at 1141-42.  We accordingly conclude that the federal district

court erred in essentially disregarding the KCOA's ruling on Kansas law

regarding partial verdicts.

---

[5]While it is true that, in McKay, the jury was discharged before the jury's
claimed verdict on another charge was revealed, and that differentiates McKay
from our case, we do not see how that factual difference undermines or alters the
principle as to partial verdicts.

-15-

After declaring that Kansas law did not recognize partial verdicts, the

KCOA then determined that neither trial nor appellate counsel were ineffective.

In so doing, the KCOA did not cite Strickland, but cited state cases which

discussed and applied Strickland's standards for an ineffective assistance of

counsel claim.  See, e.g., State v. Orr, 940 P.2d 42 (Kan. 1997).  The KCOA

reasoned as follows:

> Stripped to its essentials, Tomlin's argument is as follows:  Existing
> Kansas law does not permit a partial verdict.  That law is based, at
> least in part, upon the language in a California case, Doolittle.  That
> language in Doolittle was disavowed in a later opinion by the
> California Supreme Court in Stone.  My lawyer moved for a mistrial
> before it was known that the jury apparently had resolved the rape
> charge in my favor.  However, in the short period between the time
> my lawyer became aware of the second jury note and the court's
> declaration of a mistrial, he should have realized that withdrawing
> my mistrial motion, opposing the State's mistrial motion, and asking
> for a partial verdict on the rape charge would not have been a futility
> since the language in Doolittle relied upon by the Kansas Supreme
> Court in McKay was disavowed by the California Supreme Court in
> Stone; and the Kansas Supreme Court would, in all probability,
> reverse its ruling in McKay and sanction a partial verdict in my favor
> on the rape charge.
>
> It would be laudable if trial counsel, when faced with an issue such
> as this, could, within the short time allotted, engage in the analysis of
> Kansas and California law that Tomlin suggests.  In fact, it would be
> not only laudable but quite extraordinary.  The Sixth Amendment
> does not set the bar for trial counsel's performance so high.

Tomlin, 130 P.3d at 1234.

Since the KCOA addressed this issue of ineffectiveness on its merits, we

apply AEDPA deference.  Given the KCOA's determination that Kansas law does

not recognize partial verdicts, and considering all the circumstances of this case, we conclude that the court's analysis of the ineffective assistance of counsel is reasonable under Strickland standards. That is, since Kansas does not recognize partial verdicts, it was not objectively unreasonable for Tomlin's trial counsel to fail to move for something not recognized under state law, nor was it unreasonable for his counsel to fail to advance an argument for changing Kansas law.

We note that the district court, in granting Tomlin's habeas petition, took the view that the KCOA did not address the real constitutional issue underlying Tomlin's ineffectiveness claim, which the court identified as "whether there was a manifest necessity for a mistrial on the charge of rape." Tomlin, 516 F. Supp. 2d at 1231. The KCOA had concluded that, because there was not a unanimous agreement on all charges, but rather only a partial verdict not recognized under Kansas law, no verdict was possible. And because there was no verdict, the jury was essentially deadlocked and there was a manifest necessity for a mistrial, with the result that a later retrial was not barred by double jeopardy. See Illinois v. Somerville, 410 U.S. 458, 459 (1973) (holding that since "the mistrial met the 'manifest necessity' requirement of our cases, . . . the Double Jeopardy Clause of the Fifth Amendment . . . did not bar retrial under a valid indictment."); cf. Price v. Vincent, 538 U.S. 634, 642 (2003).

-17-

The district court, on the other hand, viewed <u>Green v. United States</u>, 355 U.S. 184 (1957), as providing the basis for the federal constitutional principle that a court must accept a verdict of partially not-guilty, with the result that there *is* a verdict which bars later retrial, and there is no manifest necessity for a mistrial. However, we do not view <u>Green</u> as establishing that principle.

In <u>Green</u>, the defendant had been indicted for first-degree murder and the trial court instructed the jury that it could convict him of either first-degree murder or of the lesser included offense of second-degree murder. The jury convicted the defendant of second-degree murder, but was silent on first-degree murder. The second-degree murder conviction was overturned, however, on appeal. The Supreme Court held that a retrial on the first-degree murder charge was barred by the double jeopardy clause because "the jury's verdict [of guilt on the second-degree charge] [w]as an implicit acquittal on the charge of first degree murder." <u>Id.</u> at 190.

The district court acknowledged that <u>Green</u> was distinguishable from the instant case "because the jury was not hung on the lesser included offense as it was in Mr. Tomlin's case," <u>Tomlin</u>, 516 F. Supp. 2d at 1235. Unlike the district court, however, we think that is a significant distinction. An affirmative conviction on one part of a charge can very well be viewed as an implicit acquittal on another part of the charge, but a deadlocked jury on one part does not suggest, in general, an implicit verdict on another, particularly where, as here,

-18-

there is no way of knowing whether the jury's note indicated merely a compromise or not.[6]  The Supreme Court's language in <u>Green</u> is instructive:  "the great majority of cases in this country have regarded the <u>jury's verdict</u> as an implicit acquittal on the charge of first degree murder."  <u>Green</u>, 355 U.S. at 190 (emphasis added).  The Court did not state that a non-verdict on one part can be regarded as an implicit acquittal.

At most, the jury's note suggests that the jury was tending toward agreement on a finding of not guilty on the rape charge of count 1, and a finding of guilt on the lesser included offense of aggravated indecent liberties.  What seems most clear, however, is that the jury was simply still deliberating on count 1 and was unable to come to a final decision.

To be sure, it is easier to draw this conclusion because the two offenses are contained within one count.  The district court, as well as Tomlin, relied upon the following passage from <u>Green</u> to argue that it makes no difference that the jury was looking at a greater and lesser included offense within a single count:

> In substance the situation was the same as though Green had been
> charged with these different offenses in separate but alternative

_____

[6]The state trial court denied Tomlin's motion for an acquittal, or alternatively, his motion for the court to approve a de facto verdict, stating, "I don't know to what extent that – the verdict that was given to us was a compromise between those who thought he was guilty on everything versus those who didn't want to convict on anything."  Appellant's App. at 120.  We view this as a factual finding by the state trial court, to which we owe deference.  <u>See</u> <u>Wilson</u>, 536 F.3d at 1070-71 ("The factual findings of the [state appellate court] are presumed correct unless rebutted by clear and convincing evidence.").

> counts of the indictment. The constitutional issues at stake here should not turn on the fact that both offenses were charged to the jury under one count.

Green, 355 U.S. at 190 n.10. They suggest that this indicates that federal law compels the acceptance of partial verdicts regardless of whether the partial verdict comes from within a single count or separate counts. Nonetheless, as Tomlin acknowledged, that language in Green was dicta. On habeas review, clearly established federal law "is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta." House, 527 F.3d at 1015 (further quotation omitted). Thus, we cannot say that Green clearly establishes that federal constitutional law compels the acceptance of partial verdicts in the circumstances of this case. And whether we look at this on a *de novo* basis to determine whether the Kansas courts violated federal double jeopardy principles in failing to grant Tomlin habeas relief, or examine the same question under AEDPA's deferential review, or whether we view the case through the prism of counsels' effectiveness for failing to argue the existence of such a principle under state or federal law, we conclude that the federal district court erred in granting Tomlin's habeas petition.

## CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

No. 07-3286, Tomlin v. McKune

**HOLLOWAY**, J., dissenting:

I must respectfully dissent. I am persuaded that trial counsel for Mr. Tomlin provided ineffective assistance at the critical point in the (first) trial when the judge read to the parties and counsel the jury note that indicated unambiguously that the jury had reached a unanimous decision to acquit Mr. Tomlin of the charge of first degree rape. Moreover, I am concerned that one of the flaws in the majority's reasoning is an especially consequential one which imposes on Mr. Tomlin a much heavier burden than is required or justified by the AEDPA and Supreme Court precedent. I shall briefly explain the reasons for my views.

**I**

The serious error of trial counsel was consenting to the mistrial in the first case, which left Mr. Tomlin exposed to a second trial on the charge of rape with the result that he was convicted and sentenced to almost 28 years' imprisonment for that offense. Nine days after the first jury had been discharged, trial counsel moved for a judgment of acquittal based on the jury's determination as reflected in the note. But that was too late because he had consented to the mistrial and it was no longer possible to poll the jurors to determine that their decision on the rape charge had indeed been final.

The issue then is whether it was objectively unreasonable for counsel to fail to realize the double jeopardy implications of the jury note indicating acquittal on the greater charge of rape and that Tomlin's double jeopardy protection would be

waived unless the motion for mistrial were withdrawn, so that Tomlin's claim would pass muster under the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984). In deciding that issue, it is not necessary to have a Supreme Court case directly on point as to partial verdicts and double jeopardy. Of course, the prevailing law on these points is the necessary context for determination of the issue, but it is not necessary that the controlling law be expressed in a Supreme Court holding that would itself qualify as well settled law under AEDPA.[1]

---

[1]Most of the focus on state law in the majority opinion and the parties' briefs seems to me to be misplaced. I think it of little consequence whether the Kansas rule on "partial verdicts" is well established. The issue underlying Tomlin's ineffective assistance claim instead is whether application of that rule in this case violated Tomlin's federal constitutional protection against double jeopardy.

It is nevertheless interesting to note, and perhaps of some consequence when the prejudice prong of *Strickland* is reached, that the state court's rejection of Tomlin's arguments does not show an impregnable barrier. In a case analogous to this one, the Kansas Court of Appeals indicated that it might have been constitutional ineffectiveness for a lawyer to fail to move for an acquittal based on a "partial verdict." That case was *Long v. State*, 87 P.3d 375 (table), 2004 WL 794430 (Kan. Ct. App. 2004), which considered a double jeopardy claim where a mistrial had been declared after the jury had sent a note saying that they were "0-12" on one of the counts. Because it was not clear whether the vote was for conviction or acquittal, the appellate court remanded the matter for trial court findings. In its opinion, the state appellate court said that if the jury had reached a unanimous verdict of acquittal "trial counsel might well have been constitutionally ineffective if the attorney made no attempt to obtain a judgment of acquittal on that count or . . . failed to object to the subsequent prosecution on that count."

Further, on direct appeal of Mr. Tomlin's conviction, the Kansas Court of Appeals did not mention any prohibition on partial verdicts but merely said that counsel should have made the motion before the jury had been discharged so that the trial judge could have determined if the jurors had indeed reached a final decision on the rape count.

*Strickland* defines the test for claims of ineffective assistance of counsel. The Supreme Court applies a general standard for attorney performance in all ineffective assistance cases. The Sixth Amendment right to the effective assistance of counsel is independent of any other right that may be implicated. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (Fourth Amendment claim and Sixth Amendment claim for ineffectiveness with respect to a Fourth Amendment claim "have separate identities and reflect different constitutional values"). Indeed, there need not be a separate underlying constitutional right at all. *See Glover v. United States*, 531 U.S. 198 (2001) (considering prejudice in ineffectiveness claim based on counsel's failure to press grouping argument under the sentencing guidelines). It is the law of ineffective assistance that must be clearly established. And *Strickland* provides the test for ineffective-assistance claims.

There was thus "clearly established federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Under that law, counsel's performance is assessed for "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. This court should determine whether the state court's determination that there was not deficient performance was an objectively unreasonable application of *Strickland*.

The significant analytical error in the majority opinion is the holding that Tomlin's claim of ineffective assistance must fail because the case on which he relies to show that his counsel's performance was inadequate, *Green v. United States*, 355

U.S. 184 (1957), supports his argument only in dicta. The controlling Supreme Court precedent is *Strickland*. The petitioner should not be required to satisfy AEDPA twice as the majority opinion requires him to do.

To require factual symmetry between a petitioner's claims and Supreme Court precedent in cases of ineffective assistance of counsel is inconsistent with well-established Supreme Court precedent. "It is past question that the rule set forth in *Strickland* qualifies as clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (quotation omitted). The need to apply the general principles set out in *Strickland* to varying fact patterns does not affect the conclusion that *Strickland* constitutes clearly established law. *Williams*, 529 U.S. at 391 ("That the *Strickland* test of necessity requires a case-by-case examination of the evidence, obviates neither the clarity of the rule nor the extent to which the rule must be seen as established by this Court." (quotations omitted)).

The proper approach is found in *Williams*. In finding that the petitioner in that case had shown that his trial counsel rendered ineffective assistance during the penalty phase of that death case, the Court assessed counsel's performance using ABA standards to determine how a reasonably competent lawyer would have performed. There is nothing in *Williams* to support the notion that another Supreme Court holding on closely analogous facts is necessary before the lawyer's performance could be held ineffective.

Very recently in *Panetti v. Quarterman*, 127 S.Ct. 2842 (2007), the Court cited *Williams* in identifying the *Strickland* test as a "general standard" whose application is not dependent on identification of a factually similar case. The Supreme Court explained:

> That the standard is stated in general terms does not mean the application was reasonable. AEDPA does not "require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied." *Carey v. Musladin*, 549 U.S. 70, __, 127 S.Ct. 649, 656, (2006) (slip op., at 2) (Kennedy, J., concurring in judgment). Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts "different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The statute recognizes, to the contrary that even a general standard may be applied in an unreasonable manner. *See, e.g., Williams v. Taylor*, 529 U.S. 362 (finding a state-court decision both contrary to and involving an unreasonable application of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)).

*Panetti*, 127 S.Ct. at 2858.

Even if *Panetti* did not exist, the panel decision would still conflict with *Williams*. "It is past question," the Court said in *Williams*, "that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" 529 U.S. at 391 (quoting 28 U.S.C. § 2254(d)(1)). And the Court explained that the need to apply the general principles of *Strickland* to varying fact patterns did nothing to change this: "That the *Strickland* test 'of necessity requires a case-by-case examination of the evidence,' obviates neither the clarity of the rule nor the extent to which the rule must be seen

as 'established' by this Court." *Id.* (quoting *West v. Wright*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring in the judgment)).

In holding there was no clearly established federal law with respect to Tomlin's claim of ineffective assistance of counsel because there existed no factually symmetrical Supreme Court decision, the majority announces a decision that directly conflicts with *Williams*. By requiring nearly perfect factual symmetry between a petitioner's case and a Supreme Court case before the petitioner is entitled to habeas relief on a claim of ineffective assistance, the majority's holding has the effect of converting every habeas petition into a distinct "class of one." *Smith v. Patrick*, 508 F.3d 1256, 1259 (9th Cir. 2007). The result is a nearly toothless and empty review of claims of ineffective assistance. *Id.*

## II

I turn now to the reasons why Tomlin's claim was properly held by the district judge to satisfy the first and second prongs of *Strickland*. The majority's rejection of the district judge's analysis is clearly wrong in my judgment. I am convinced that the district judge was correct in concluding that Tomlin has shown that counsel's performance fell below the objective standard we must apply and that, but for counsel's error, there is a reasonable probability that the result would have been different. *See Strickland*, 466 U.S. at 687-88, 694. More to the point, I agree with the district judge that the state court's application of *Strickland* was unreasonable.

-6-

Although I emphasize in Part I, *supra*, that Tomlin should not be required to show that his counsel overlooked a controlling Supreme Court precedent on "partial verdicts" and double jeopardy in order to show that the attorney's performance was objectively unreasonable (because *Strickland* is the relevant Supreme Court precedent), *some* standard is of course necessary to an assessment of the objective reasonableness of counsel's performance. The district judge was clearly correct in holding that trial counsel should have considered the double jeopardy implications of the purported state rule against partial verdicts. With the focus on the jury note saying that the jurors had reached the conclusion by a unanimous vote that Tomlin was not guilty of rape, I conclude that it a reasonably effective attorney would have realized that steps had to be taken to reap the benefit of that jury decision and to spare Mr. Tomlin from being tried a second time on that charge. A reasonably effective attorney would have known that double jeopardy rights were at stake, that a mistrial followed by a re-trial does not infringe on double jeopardy protections where the mistrial is justified by manifest necessity, and would have comprehended that manifest necessity was not present as to the charge of first degree rape, *i.e.*, the jury had been able to reach a verdict on that charge. To do nothing, which is what trial counsel in actuality did, is professionally unacceptable.

The trial lawyer's error here was not a tactical decision. This is clearly shown by the fact that counsel did move for a judgment of acquittal based on the jury note, but only did so days later, after the jury had been discharged and it was too late.

-7-

The norms of professional conduct required that counsel take all reasonable steps to protect his client, which in the circumstances presented means that an effort was required to take advantage of the jury's apparent unanimous decision to acquit on the most serious charge Tomlin faced. At the least, the attorney should have urged the court to poll the jury to determine if there was any lingering doubt about the note. The state court's holding that it was reasonable for counsel to do nothing because some counter-arguments based on state law were available to the prosecution is utterly unpersuasive to me.

I also believe that Tomlin meets the second prong of *Strickland*, that he has shown that there is a reasonable probability that, but for counsel's error, the results of the proceeding would have been different. The state court did not reach this issue, so our review is de novo. To this point in this discussion I have assumed that the jury's decision was final. But to decide Tomlin's claim under the second prong of *Strickland*, it is necessary to examine that assumption.

I certainly detect no hint from the note that the jurors' views on the rape charge were tentative or that their consideration of that charge was incomplete. I recognize the possibility that, if polled, one or more jurors might have responded that their vote on the rape charge had been provisional, dependent on a unanimous conviction of the lesser charge perhaps. This is, of course, an inquiry in which absolute certainty is not possible. I conclude that the likelihood is very high that if polled the jurors would have said, as the note indicates, that the decision was final.

In my view, this likelihood is sufficiently great to support holding for Tomlin on the second prong of *Strickland*. In other words, I believe that there is a reasonable probability that the outcome of the proceeding would have been different.

I would affirm the judgment of the district court.